**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CAMILLA MOORE, | ) |
| | ) **CIVIL ACTION** |
| Plaintiff, | ) **File No. _____** |
| v. | ) |
| | ) **JURY TRIAL REQUESTED** |
| CITY OF STOCKBRIGE, GEORGIA, | ) |
| RANDY KNIGHTON, in his | ) |
| individual and official capacities, ELTON | ) |
| ALEXANDER, in his individual and | ) |
| official capacities, YOLANDA BARBER, | ) |
| in her individual and official capacities, and | ) |
| ALPHONSO THOMAS, in his individual | ) |
| and official capacities, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff, Camilla Moore ("Ms. Moore" or "Plaintiff"), and

files this Complaint for Damages and Equitable Relief against Defendants City of

Stockbridge, Georgia ("the City"), Randy Knighton, in his individual and official

capacities, Elton Alexander, in his individual and official capacities, Yolanda

Barber, in her individual and official capacities, and Alphonso Thomas, in his

individual and official capacities, showing the Court as follows:

## PARTIES

1.

Ms. Moore is an African American woman and a resident of Atlanta, Georgia. She was hired by the City on or around March 27, 2017 as the Administrative Services/Community Development Director. She subjects herself to the jurisdiction of this Court.

2.

Defendant City of Stockbridge, Georgia is a municipality in the State of Georgia and subject to the jurisdiction of this Court. It is governed by a Mayor and City Council. The City may be served with process by personal service upon Mayor Anthony S. Ford at City Hall, 4640 North Henry Blvd., Stockbridge, Georgia 30274, or wherever he may be found.

3.

Defendant Randy Knighton is the former City Manager for the City. He is sued in his individual and official capacities and may be served with process by personal service at his residence or by other means authorized by the Federal Rules of Civil Procedure.

4.

Defendant Elton Alexander is, and was at all relevant times, a Councilmember of the City's City Council. He is sued in his individual and official capacities and

may be served with process by personal service at his residence or by other means authorized by the Federal Rules of Civil Procedure.

5.

Defendant Yolanda Barber is, and was at all relevant times, a Councilmember of the City's City Council. She is sued in her individual and official capacities and may be served with process by personal service at her residence or by other means authorized by the Federal Rules of Civil Procedure.

6.

Defendant Alphonso Thomas is, and was at all relevant times, a Councilmember of the City's City Council. He has also served as the City's Mayor Pro Tem. He is sued in his individual and official capacities and may be served with process by personal service at his residence or by other means authorized by the Federal Rules of Civil Procedure.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.

Ms. Moore has satisfied all administrative prerequisites to perfect her claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Specifically, she timely filed a Charge of Discrimination against the City at the Equal Employment Opportunity Commission ("EEOC") on January 29, 2021. In consultation with the EEOC, Ms. Moore later amended her

3

Charge to clarify the claims that were brought in her original charge.

8.

Ms. Moore has timely filed this complaint following issuance of a Determination and Notice of Rights and Notice of Right to Sue and two tolling agreements entered into by Ms. Moore and the City.

**JURISDICTION AND VENUE**

9.

This Court has federal question jurisdiction over Ms. Moore's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Mr. Moore's state law claims under 28 U.S.C. § 1367.

10.

Ms. Moore is a citizen and resident of the State of Georgia.

11.

Defendant City of Stockbridge, Georgia is a municipality in the State of Georgia and subject to the jurisdiction of this Court.

12.

Defendant Knighton is a citizen and resident of the State of Georgia.

13.

Defendant Alexander is a citizen and resident of the State of Georgia.

14.

Defendant Barber is a citizen and resident of the State of Georgia.

15.

Defendant Thomas is a citizen and resident of the State of Georgia.

16.

The violations of Plaintiff's rights occurred in the Northern District of Georgia. Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events, omissions, and/or unlawful actions and practices which give rise to Plaintiff's claims occurred in this District.

## **FACTS**

17.

Plaintiff Camilla Moore is a Black woman who was hired as Administrative Services/Community Development Director for the City on or about March 27, 2017.

18.

On or about May 10, 2017, Michael Harris—a white male and the City's then-City Manager—resigned as City Manager and recommended that Ms. Moore be appointed as interim City Manager.

19.

At that time, the City's Mayor was Judy Neal, a white female.

5

20.

In a private discussion following Mr. Harris' resignation, Ms. Moore explained to Ms. Neal her qualifications to serve as City Manager on either an interim or permanent basis.

21.

After Ms. Moore discussed her qualifications, Ms. Neal told Ms. Moore that the City would not consider hiring her for the City Manager position because the City was "not ready for a Black female City Manager."

22.

On another occasion, Ms. Neal confronted Ms. Moore about Ms. Moore sharing her experiences as a Black woman in a meeting. Ms. Neal told Ms. Moore that it was inappropriate for her to talk about her experiences as a Black woman and described the Black City Councilmembers as "ignorant."

23.

Rather than appoint Ms. Moore into the vacant City Manager position following Mr. Harris' resignation, Ms. Neal made herself the interim City Manager despite having no qualifications to fill that role.

24.

On or about July 20, 2017, the City hired Slavin Management Consultants ("SMC") to identify the best candidates to fill the City Manager position.

25.

On August 7, 2017, Ms. Moore applied for the City Manager position and thereafter went through an interview and screening process with SMC.

26.

Following a three-phase selection process, SMC ranked Ms. Moore in the top 1% of applicants.

27.

SMC advised Ms. Neal and the members of the City Council that Ms. Moore was the most qualified candidate to fill the position.

28.

Ms. Neal stated in a meeting with City Councilmembers that was closed to the public that she would not bring Ms. Moore forward as her choice for the City Manager position regardless of Ms. Moore's qualifications or how she placed in the national search.

29.

Ms. Neal did not wish to place Ms. Moore in the City Manager position because of her race, sex, and/or race and sex.

30.

Ultimately, the City hired Randy Knighton, a Black male, to fill the City Manager position which he assumed on or about September 25, 2017.

31.

Around the time of Mr. Knighton's hire, Ms. Neal—who had been running for re-election—withdrew from the election for Mayor. Ms. Neal was later replaced by Anthony Ford, a Black male, who was sworn in as Mayor on or about January 9, 2018.

32.

Beginning in September 2017, Ms. Moore verbally objected to the City's selection of Mr. Knighton over her and complained to the members of the City Council that the City and Mayor Neal had discriminated against her based on her sex in hiring Mr. Knighton and told them of Ms. Neal's remark that the City was not ready for a "Black female City Manager."

33.

In a meeting that was closed to the public shortly after Mr. Knighton was selected as City Manager and after Ms. Moore began complaining about the City's discrimination, Defendant Alexander said that the City, "wanted a man" and "didn't really need a woman anyway."

34.

Also at this meeting, the City Council attempted to discourage Ms. Moore from filing a Charge of Discrimination with the EEOC by agreeing to create the position of Assistant City Manager and to place Ms. Moore in this role.

35.

In the months shortly after Mr. Knighton became City Manager, the Assistant City Manager position was created, and Ms. Moore was placed in that role.

36.

Thereafter, Ms. Moore was employed in a joint role as both Administrative Services/Community Development Director and Assistant City Manager.

37.

As Assistant City Manager, Ms. Moore's authority and responsibilities with the City expanded. Whereas she previously was charged with running the City's administrative services and community development departments, following the promotion, she kept those responsibilities and was also charged with supervising multiple City department directors.

38.

Soon after she objected to the City's selection of Mr. Knighton over her and was subsequently promoted to Assistant City Manager, Ms. Moore began being subjected to a campaign of harassment and bullying in retaliation for her previous complaints of discrimination. This retaliatory harassment was directed, primarily, by three members of the City Council: Defendant Alphonso Thomas; Defendant Yolanda Barber; and Defendant Elton Alexander.

39.

On multiple occasions, these City Councilmembers publicly undercut and berated Ms. Moore.

40.

As one example of this public undercutting of Ms. Moore, in September and October 2020, these City Councilmembers, led by Mr. Thomas, attempted to remove a contractor who was adequately performing services for the City's building division, which was under Ms. Moore's supervision, in an attempt to disrupt the functioning of the department and cause her professional harm.

41.

In addition, they frequently made false assertions, both in private and at City Council meetings, that Ms. Moore had failed to take actions that were part of her duties as Assistant City Manager and would sometimes take legislative action based on these false assertions.

42.

One example of such false assertions occurred in February or March 2019. Mr. Thomas, Ms. Barber, and Mr. Alexander claimed in a City Council meeting that Ms. Moore had failed to publish procurement items, when in fact she had done so months before, and despite being notified that she had, in fact, published the

procurement items, they proceeded to publicly chastise her for supposedly failing in her duties.

43.

Another example of such false assertions occurred during the January 28, 2020 City Council meeting. Mr. Thomas, Ms. Barber, and Mr. Alexander falsely accused Ms. Moore of providing misleading information concerning submission of the City's Comprehensive Land Use Plan, adoption of a Unified Development Code, and budgets for both.

44.

After these false accusations at the January 28, 2020 meeting, Ms. Moore submitted a written complaint to Mr. Knighton which went unaddressed.

45.

Mr. Thomas, Ms. Barber, and Mr. Alexander also utilized the City Clerk Vanessa Holiday to harass Ms. Moore. Ms. Holiday would frequently come to Ms. Moore's office and slam doors, berate Ms. Moore, curse at Ms. Moore, and attempt to disrupt the operation of City departments that were under Ms. Moore's supervision. During these interactions, Ms. Holiday would remark that she had been sent by Mr. Thomas, Ms. Barber, and/or Mr. Alexander to "deal with" Ms. Moore.

46.

Ms. Moore frequently complained to Mr. Knighton about the way she was being treated, but Mr. Knighton ignored her complaints and refused to take corrective action.

47.

During her employment as Assistant City Manager, Ms. Moore was expressly directed to hire a white economic development director because of his race, despite the fact that he was underqualified for the position.

48.

Mr. Knighton, Mr. Alexander, Mr. Thomas and Ms. Barber frequently pushed an agenda, in meetings that were closed to the public, to hire more white people and fewer Black people, regardless of qualifications for open positions. During these meetings, these persons made comments, among others, that the "City is too Black;" "we have too many Black employees;" and "just because the City is Black doesn't mean the employees need to be."

49.

On or about September 22, 2020, upon reviewing an agenda for the next upcoming City Council meeting, Ms. Moore discovered that the agenda included an item abolishing her position as Assistant City Manager under the guise of a restructuring process.

50.

This agenda item was never previously discussed with Ms. Moore.

51.

Contrary to the City's assertions, there was no reorganization or restructuring of the City's departments; rather, the only change that was proposed was elimination of Ms. Moore's position as Assistant City Manager and eliminating her from the supervision chain of the City's departments other than Administrative Services and Community Development, of which she was to remain Director.

52.

No other senior City administrators, including department directors, had their titles or job responsibilities impacted by the purported reorganization, other than the fact that some directors would thereafter report directly to Mr. Knighton instead of Ms. Moore.

53.

The proposed change would significantly impact Ms. Moore's job duties, title, prestige, responsibilities, authority, and reputation.

54.

On September 23, 2020, Ms. Moore sent a memorandum to Mr. Knighton complaining that she had been harassed throughout her time as Assistant City Manager, in retaliation for her previous complaints of discrimination, stating that

she believed her removal from the Assistant City Manager position was yet another discriminatory and/or retaliatory act, and stating that, if the City followed through on this action, she intended to notify the EEOC.

55.

On or about September 25, 2020, the City eliminated the Assistant City Manager position and demoted Ms. Moore, such that she only remained Director of Administrative Services and Community Development.

56.

Following this demotion, Ms. Moore objected verbally to Mr. Knighton and members of the City Council, and in writing, on the basis that the demotion constituted another act of discrimination and/or retaliation for her previous complaints of discrimination.

57.

On October 13, 2020, only a few days after she began complaining that the demotion constituted unlawful discrimination or retaliation, Ms. Moore was placed on administrative leave, her access to critical information was blocked, she was directed  to cease communication with her subordinates, she was directed to not perform any further work on behalf of the City (except for providing a status report to Mr. Knighton concerning all major projects and timely responding to requests for

information from Mr. Knighton), and she was directed to return all equipment issued to her by the City.

58.

Ms. Moore submitted a written objection to this administrative leave decision the same day.

59.

On October 19, 2020, Mr. Moore submitted a written appeal of the demotion from Assistant City Manager in which she stated that she believed the demotion was in retaliation for her complaining about discrimination.

60.

After sending the October 19, 2020 letter complaining of unlawful retaliation, Ms. Moore had a conversation with Mr. Knighton during which she asked him why she was removed from the Assistant City Manager position.

61.

During this conversation, Mr. Knighton indicated that, based on her age, Ms. Moore had too much on her plate and was overworking herself.

62.

On November 2, 2020, Ms. Moore submitted a written complaint, stating that she believed her forced leave in violation of the established parameters for the use

of administrative leave was an act of unlawful retaliation. Ms. Moore also requested

to return to her work at the City.

63.

On November 10, 2020, the City terminated Ms. Moore's employment.

64.

In the letter that Mr. Knighton sent to Ms. Moore notifying her of her

termination, Mr. Knighton stated the following:

> As the basis for this termination, I have determined that your actions in
> response to legitimate proposals offered by members of the City
> Council to reorganize your department's operations and the
> organizational structure of the city constitute conduct incompatible
> with continued employment with the City. Additionally, matters have
> come to my attention regarding the operation of the department during
> your tenure.

65.

The "actions" referenced in Mr. Knighton's letter refer to Ms. Moore's

complaints that the actions of the City, demoting her and placing her on involuntary

leave, were discriminatory and/or retaliatory.

66.

Following the termination, Ms. Moore contacted the City's human resources

department to inquire as to whether her accrued vacation leave would be paid to her.

67.

During this conversation, the human resources representative suggested that Ms. Moore's age was considered in the City's decision to terminate her, as it would enable the City to avoid paying her retirement, stating "You've been in government a long time; you know that some city governments find it favorable to get rid of people in your position" because they will save money by not paying out retirement benefits.

68.

Ms. Moore would have been vested in the City's retirement plan within approximately six months had she not been terminated.

69.

At the time of her termination, Ms. Moore was 61 years old.

70.

Brecca Johnson, who the City hired to replace Ms. Moore, is twenty years younger than Ms. Moore.

## <u>COUNT I</u>
## TITLE VII RACE, SEX, AND INTERSECTIONAL DISCRIMINATION
### *Against Defendant City of Stockbridge, Georgia*

71.

Plaintiff incorporates paragraphs 1 through 70 herein by reference as if set forth fully herein.

72.

At all material times, Ms. Moore was an "employee" of the City within the meaning of 42 U.S.C. § 2000e(f).

73.

At all material times, the City met the definition of an "employer" under the meaning of 42 U.S.C. § 2000e(b).

74.

At all material times, the City employed Ms. Moore.

75.

Former-mayor Neal and Defendants Knighton, Alexander, Barber, and Thomas harbored a discriminatory animus toward Ms. Moore because of her race, her sex, and/or her race and sex.

76.

The City, through the actions of former-mayor Neal and Defendants Knighton, Alexander, Barber, and Thomas, discriminated against Ms. Moore in violation of Title VII by taking adverse actions against her including, but not limited to, failing to select her as interim City Manager, failing to hire her as City Manager, taking actions to disrupt the functioning of the departments that she oversaw, taking actions to impugn Ms. Moore's professional reputation, abolishing her position as

Assistant City Manager, demoting her, placing her on administrative leave, and terminating her employment.

77.

In so doing, the City knowingly and intentionally discriminated against Ms. Moore in violation of Title VII.

78.

As a direct and proximate result of the City's intentional discrimination, Ms. Moore has faced changes to the terms, conditions, and/or privileges of her employment, including but not limited to, missed opportunities for advancement with corresponding increases in pay, difficulty overseeing the departments that were her responsibility, and loss of employment.

79.

Ms. Moore has also suffered emotional pain and suffering as a result of the discrimination that she has faced and is entitled to recover for these damages and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

80.

In taking these adverse actions against Ms. Moore, the City unlawfully discriminated against her based on her race, her sex, and/or her race and sex in violation of Title VII.

81.

Ms. Moore's protected characteristics of race, sex, and/or her race and sex were, individually or collectively, motivating factors for the adverse actions taken against Ms. Moore.

## COUNT II
### TITLE VII RETALIATION
### *Against Defendant City of Stockbridge, Georgia*

82.

Plaintiff incorporates paragraphs 1 through 70 herein by reference as if set forth fully herein.

83.

At all material times, Ms. Moore was an "employee" of the City within the meaning of 42 U.S.C. § 2000e(f).

84.

At all material times, the City has met the definition of an "employer" under the meaning of 42 U.S.C. § 2000e(b).

85.

At all material times, the City employed Ms. Moore.

86.

Ms. Moore engaged in protected activity under Title VII by, including but not limited to, objecting to the City's unlawful discrimination and retaliation against her,

including objecting to the City's refusal to select her as City Manager, submitting written complaints to Mr. Knighton complaining about discriminatory and retaliatory treatment, objecting to her demotion from the Assistant City Manager position, submitting a written objection to the decision to place her on administrative leave, and submitting a written appeal of her demotion from the Assistant City Manager position.

87.

The City retaliated against Ms. Moore in violation of Title VII by taking retaliatory and adverse actions against her, including but not limited to, by taking actions to disrupt the functioning of the departments that Ms. Moore oversaw, taking actions to impugn Ms. Moore's professional reputation, abolishing her position as Assistant City Manager, placing her on administrative leave, and terminating her employment.

88.

In so doing, the City knowingly and intentionally retaliated against Ms. Moore in violation of Title VII.

89.

As a direct and proximate result of the City's intentional retaliation, Ms. Moore has faced changes to the terms, conditions, and/or privileges of her employment, including but not limited to, missed opportunities for advancement

with corresponding increases in pay, difficulty overseeing the departments that were her responsibility, and loss of employment.

90.

Ms. Moore has also suffered emotional pain and suffering as a result of the retaliation that she has faced and is entitled to recover for these damages and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

91.

In taking these adverse actions against Ms. Moore, the City unlawfully retaliated against her in violation of Title VII.

## COUNT III
## 42 U.S.C. §1983 – RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981
### *Against All Defendants*

92.

Plaintiff incorporates paragraphs 1 through 70 herein by reference as if set forth fully herein.

93.

At all material times, Ms. Moore was employed by the City.

94.

At various material times, former-Mayor Neal and Defendants Knighton, Alexander, Barber, and Thomas were personally involved in the adverse actions taken against Ms. Moore.

95.

Neal and Defendants Knighton, Alexander, Barber, and Thomas harbored discriminatory animus toward Ms. Moore because of her race.

96.

Defendants discriminated against Ms. Moore in violation of 42 U.S.C. § 1981 by taking adverse actions against her, including but not limited to, taking actions to disrupt the functioning of the departments that Ms. Moore oversaw, taking actions to impugn Ms. Moore's professional reputation, abolishing her position as Assistant City Manager, placing her on administrative leave, and terminating her employment.

97.

In so doing, Defendants knowingly and intentionally discriminated against Ms. Moore in violation of 42 U.S.C. § 1981.

98.

As a direct and proximate result of Defendants' intentional discrimination, Ms. Moore has faced changes to the terms, conditions, and/or privileges of her employment including but not limited to, missed opportunities for advancement with

corresponding increases in pay, difficulty overseeing the departments that were her responsibility, and loss of employment.

99.

Ms. Moore has also suffered emotional pain and suffering as a result of the discrimination that she has faced and is entitled to recover for these damages and all other appropriate damages, remedies, and other relief available under 42 U.S.C. § 1981 and all federal statutes providing remedies for violations of 42 U.S.C. § 1981.

100.

Defendants' actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Ms. Moore's federally protected rights, and she is therefore entitled to punitive damages.

101.

In taking these adverse actions against Ms. Moore, Defendants acted under color of state or local law and unlawfully discriminated against her based on her race.

**<u>COUNT IV</u>**
**42 U.S.C. §1983 – RETALIATION IN VIOLATION OF 42 U.S.C. § 1981**
***Against All Defendants***

102.

Plaintiff incorporates paragraphs 1 through 70 herein by reference as if set forth fully herein.

24

103.

At all material times, Ms. Moore was employed by the City.

104.

At all material times, former-Mayor Neal and Defendants Knighton, Alexander, Barber, and Thomas were personally involved in the retaliatory actions taken against Ms. Moore.

105.

At all material times, the City employed Ms. Moore.

106.

Ms. Moore engaged in protected activity under 42 U.S.C. § 1981, by objecting to the City's unlawful discrimination and retaliation against her, including, but not limited to, objecting to the City's refusal to select her as City Manager, submitting written complaints to Mr. Knighton complaining about discriminatory and retaliatory treatment, objecting to her demotion from the Assistant City Manager position, submitting a written objection to the decision to place her on administrative leave, and submitting a written appeal of her demotion from the Assistant City Manager position.

107.

Defendants retaliated against Ms. Moore in violation of 42 U.S.C. § 1981 including, but not limited to, by taking actions to disrupt the functioning of the

departments that Ms. Moore oversaw, taking actions to impugn Ms. Moore's professional reputation, abolishing her position as Assistant City Manager, place on administrative leave, and terminating her employment.

108.

In so doing, Defendants knowingly and intentionally retaliated against Ms. Moore in violation of 42 U.S.C. § 1981.

109.

As a direct and proximate result of Defendants' intentional retaliation, Ms. Moore has faced changes in the terms, conditions, and/or privileges of her employment, including but not limited to, missed opportunities for advancement with corresponding increases in pay, difficulty overseeing the departments that were her responsibility, and loss of employment.

110.

Ms. Moore has also suffered emotional pain and suffering as a result of the discrimination that she has faced and is entitled to recover for these damages and all other appropriate damages, remedies, and other relief available under 42 U.S.C. § 1981 and all federal statutes providing remedies for violations of § 1981.

111.

Defendants' actions were taken under color of state and local law, were undertaken intentionally, willfully, and maliciously with respect to, or with reckless

disregard for, Ms. Moore's federally protected rights, and she is therefore entitled to punitive damages against the individual Defendants.

## COUNT V
## AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### *Against Defendant City of Stockbridge, Georgia*

112.

Plaintiff hereby incorporates by reference paragraphs 1 through 70 of her Complaint, as if specifically set forth herein.

113.

At the time of her termination, Plaintiff was 61 years old, and at all relevant times she was an employee protected by the ADEA.

114.

At the time of her termination, Plaintiff was more than qualified for the position he held based on her education, experience, record of performance, and length of service.

115.

The City hired Brecca Johnson, a substantially younger person, to replace Plaintiff.

116.

Defendants Knighton, Alexander, Barber, and Thomas harbored a discriminatory animus toward Ms. Moore because of her age.

117.

The City discriminated against Plaintiff in violation of the ADEA by taking adverse actions against her, including but not limited to, abolishing her position as Assistant City Manager, placing her on administrative leave, and terminating employment.

118.

In so doing, Defendant knowingly and intentionally discriminated against Plaintiff because of her age.

119.

In taking these adverse actions against Plaintiff, Defendant unlawfully and willfully discriminated against her based on her age in violation of the ADEA.

120.

Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

## COUNT VI
## ATTORNEYS' FEES
### *Against All Defendants*

121.

Plaintiff incorporates paragraphs 1 through 70 herein by reference as if set forth fully herein.

122.

Ms. Moore is entitled to the recovery of the costs of litigation and her attorneys' fees under 42 U.S.C. §1988, as Defendants have acted in bad faith, been stubbornly litigious, and caused Ms. Ms. Moore unnecessary trouble and expense.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.     That the Court take jurisdiction of this matter;

B.     That process be served;

C.     That the Court enter judgment in favor of Plaintiff against Defendants as set forth in each count of this Complaint;

D.     That the Court award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

E.     That the Court award Plaintiff prejudgment interest as required by law;

29

F. That the Court award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

G. That the Court award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

H. That the Court award Plaintiff punitive damages against the individual Defendants sufficient to punish them for their unlawful conduct and deter them from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

I. That the Court adjudicate and declare that Defendants have violated Plaintiff's rights under each of the federal statutes listed above;

J. That the Court award Plaintiff reasonable attorneys' fees and expenses pursuant to 42 U.S.C. §1988;

K. That the Court grant to Plaintiff the right to have a trial by jury on all issues triable by a jury; and

L. That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 15th day of April, 2024.

30

**BUCKLEY BALA WILSON MEW LLP**

By:     */s/ Edward D. Buckley*
        Edward D. Buckley
        Georgia Bar No. 092750
        edbuckley@bbwmlaw.com
        J. Kyle Brooks
        Georgia Bar No. 773561
        kbrooks@bbwmlaw.com
        Joseph Quattlebaum
        Georgia Bar No. 319971
        jquattlebaum@bbwmlaw.com

Buckley Bala Wilson Mew LLP
600 Peachtree St. NE, Ste. 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101
*Counsel for Plaintiff*